The first case called is Darlene Green v. John Papa and Pallas Papa Hale, Subchick and Dancing at 513-029. Ms. Zimmer? Good morning, Justice.  As I'm sure you know, this case involves a situation of legal malpractice. The question before the trial court and before this court was whether or not Mr. Papa's actions caused harm to his client, Darlene Green. We have filed a motion in this case to strike a portion of the defendant's brief regarding the standard of review, and that was based on the citations to an unpublished opinion. You know, we say we grant your motion. That doesn't mean we still have to determine what our standard of review is. It's not as if we then ignore it. No question. That motion has been taken with the case. Yes, ma'am. The standard of review in this case is properly de novo, and there are two reasons for this. This case involves a large amount of documentary evidence, and there's little or no dispute about the facts in the underlying case. And secondly, in reaching its decision, the trial court necessarily construed and ruled upon the legal effect of those documents in reaching certain conclusions of law and applied those facts to the law. And therefore, this court should undertake a de novo review in this case. You're not saying the facts are indisputed, are you? No. As a matter of fact, there is little or no dispute about the facts in the underlying case. In an ordinary negligence case such as this one is, we have a question of a breach of duty, causation, and damages is no different from any other negligence action. Breach of duty in this case was the failure to follow the rules of civil procedure. A reasonable attorney in Mr. Papa's position would have designated his deposition of Dr. Schrodinger as an evidence deposition. He did not. He had opportunities to correct that mistake before the hearing, and he did not. Opposing counsel has argued the defendant is not liable in this case because it was the court of claims that was wrong in refusing to admit Dr. Schrodinger's deposition in evidence. And has termed this a legally unsound basis for the court of claims decision. But there is no legal basis for the court of claims to have admitted the deposition. The court of claims made the correct decision in regard to the deposition. Mr. Papa made a mistake when he failed to designate his notice of deposition as an evidence deposition. The rules are clear on that issue. Did Mr. Papa intend to introduce that deposition at the court of claims hearing? Yes, ma'am. So he made every effort to get it in? He did at the time of the hearing, and this case is not about Mr. Papa's efforts during the hearing or afterwards when he filed his arguments with the court of claims. This case is about Mr. Papa's actions prior to that. So no one would deny that had the deposition of Schrodinger come in, the court of claims would have had more evidence upon which to award past medical bills, potentially pain and suffering, etc., based on Schrodinger's testimony? Exactly. Nobody would dispute that that would have been an important piece of evidence? Well, apparently there is something of a dispute in that regard as far as the causation issue is in this case because what is being argued and what the trial court found was that there was no causation in regard to Mr. Papa's actions. In other words, the court of claims would have reached the same decision. Dr. Schrodinger's testimony would have made no difference. I saw that Mr. Bartholomew, who I understand is a lawyer, testified that the fall was a superseding event. Was that testimony objective to you? Actually, Mr. Bartholomew did not testify to that. It gets really nowhere in his testimony. It was argued it was a superseding event by the defense in closing argument, but the trial court did indicate that part of the conclusion that there was no causation was because the October event was a superseding event. Who testified to that? I'm sorry? Who testified to that? No one. So that was just argued? Correct. Now, in order for it to have been a superseding event, it would have had to have been totally unconnected to Miss Green's original injury. And Dr. Schrodinger testified in regard to that possibility when Mr. Papa took his deposition. In fact, Mr. Papa very carefully presented a hypothetical to Dr. Schrodinger in which Mr. Papa asked Dr. Schrodinger to assume that Miss Green had had this second event in October and asked Dr. Schrodinger if that would cause an increase in the injury that she already had from the June event. And Dr. Schrodinger answered that it certainly could. He didn't answer that it did, right? He did not say it absolutely did. There's no testimony in the case that she was predisposed to further injury as a result of the original accident. I mean, he said it could. He said it's possible. Correct. Right. And so then it's up to the trial. At that point, trial fact has to decide whether it did. And that's true. But there was no disputing evidence to counter Dr. Schrodinger's opinion. And the might or could standard is sufficient to allow the decider to determine that, in fact, that is what happened. Okay. Do you think that Mr. Papa's demand of $595,625 is somehow committing him to the amount of damages he thought his client had suffered? I don't believe that there is any authority for saying that that necessarily commits him to that. I think it's an indication of what he believed the value of his client's case was. So the trial court's role here was to determine what the court of claims decision should have been if Dr. Schrodinger's testimony was properly before it. Well, the trial court had to determine whether or not Mr. Papa was negligent. Initially, yes. Initially. In other words, did he fail to do something a reasonably well-qualified attorney should have done, or did he do something that a reasonably well-qualified attorney would not have done, right? Exactly. And there was expert testimony on both sides as to that issue. There was. However, the expert testimony on behalf of the defense admitted that the standard in regard to whether or not to designate a deposition as evidence for discovery is contained in the rules. Mr. Bartholomew did testify that Mr. Papa was not negligent in his opinion. Is that right? Mr. Bartholomew testified that Mr. Papa's actions were the same thing that he and others that he knows of would have done. I don't know that that's saying that Mr. Papa was not negligent, but that's what Mr. Bartholomew testified. I mean, we're in the same situation here as in a we see a lot more medical malpractice cases where opposing experts give their opinions as to whether or not a doctor was negligent. And it's up to the trier of fact. And on that issue, isn't that a manifest weight issue that we have to defer to the trier of fact? Not when we're talking about a situation where we're applying the facts to the law. I mean, the law in this case is set out in the rules. And if an attorney fails to follow the rules, then it injures his client. I mean, that is negligence. I mean, if we're not required to follow the rules, which have the force of law, then I can't imagine how we could possibly safely practice law if we don't know that the rules set out what we are required to do. If we can assume that even if we don't follow the rules, that a court of law somewhere, sometime, is likely to just excuse our failure. I mean, to me, in this case, the negligence is more than clear. In regard to the question of causation, whether or not Dr. Schettinger's testimony would have made any difference in the outcome for the court of claims, the defense has argued in this case before this court that it would not have been against the manifest weight of the evidence for the court of claims to reject the plaintiff's claim entirely. But an important point is that the court of claims did not reject the plaintiff's claim entirely. The court of claims awarded images to the plaintiff in spite of what the defendant has termed an incomplete basis for a finding of causation on the part of Dr. Lynn and Dr. King, who also testified for Ms. Green. And their depositions were admitted into evidence in the court of claims. But because the court of claims awarded images to the plaintiff in spite of this, how can it be said that the court of claims would have ruled any differently if it had had the opportunity to consider Dr. Schettinger's testimony? It is against the manifest weight of the evidence, that being the evidence of the court of claims' decision in favor of the plaintiff to hold that Dr. Schettinger's testimony would have made no difference. The trial court's order here stated that the court of claims found that all the images to the plaintiff after October 5, 1998 were cut off because the doctors, including Dr. Schettinger, were not told of this event by the plaintiff. But this statement makes no sense, because the failure of plaintiffs to inform the doctors of this event provides no basis for cutting off plaintiff's damages, and because the court of claims did not consider Dr. Schettinger's testimony and therefore could not cut off plaintiff's damages because of anything that was contained in his testimony. The court of claims cut off plaintiff's damages after October because it had no medical evidence before it regarding any damages after that date. It did not have Dr. Schettinger's testimony. The term proximate cause involves two components, cause in fact and legal cause. Cause in fact exists when there is a reasonable certainty that a defendant's act caused the injury or damage, but a defendant's conduct is a cause in fact of plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. Legal cause is a question of foreseeability. In a legal malpractice case, what we are talking about is but-for causation. And in essence, but-for causation involves only the first component of proximate cause. In other words, but-for causation is a somewhat less than proximate cause element. But-for causation is nothing more than cause in fact. Was the defendant's conduct a material element and a substantial factor in bringing about the result that occurred in the court of claims? Question of proximate cause is answered by asking whether there is a reasonable certainty that the attorney's act was a material element and a substantial factor in bringing about the damages to his client. This is not the sole cause. The Lawyer's Negligent Act must be a cause without which the damages would not have occurred. In this case, there is no question that without Mr. Provence's error, the damage to Darlene Green, certainly to the extent of medical bills and pain and suffering as to the surgery performed by Dr. Shedder and her recovery from that surgery, would not have occurred. There is no way that these damages would be awarded absent the testimony of Dr. Sheddinger. With Dr. Sheddinger's testimony, those damages more likely than not would have been awarded by the court of claims. Those damages should have been awarded by the trial court in this case. So we're asking this court to correct those errors of the trial court. Thank you. Mr. Passage. Is it Passage, yeah? Passage. On a second. Good morning. Good morning. I'm very pleased to report. The issues, I think, in the order in which they are presented here, is what is the standard of review? And if the Shevlin case is going to be rejected, the quote that we took out of it comes right out of the Supreme Court in the Eichner case that counsel for the appellant cited. And it's frankly the manifest way to the evidence. It hasn't changed once. It's when the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. I mean, that's been the standard forever in the manifest way to the evidence. The other part in this Eichner case on this standard that I just read when I was sitting over there that the court also says is when facts depend on the credibility of witnesses, the appellate courts are going to give the trial courts much more deference because they were there at the time the person was testifying or the people were testifying. And as we know, when we take a look into credibility, we go beyond their words. We look into the demeanor of the person when they testify, how they testify. What is it about demeanor that's important here? Well, here in terms of the experts and also in terms of the plaintiff. Well, it seems to me that, and I'm sure that every member of this court knows, that Dr. Schettinger is a very well-renowned surgeon in the St. Louis metropolitan area. Many plaintiff lawyers use Dr. Schettinger solely for the purpose of introducing medical causation. So it's of no surprise that Mr. Papa, who wanted to best represent his client, hires Dr. Schettinger and wants that testimony introduced, and yet the notice that he files is not in compliance with Illinois Supreme Court rules. That's objective, isn't it? I think the courts, the court claims determination of whether or not 202 was complied with, yes. I think that's a question. Very objective. That's an objective. And then he argues to actually get the deposition in, saying he had an agreement, but there's no authority in Illinois law for making an agreement to get around a rule, is there? Well, there is within the rule itself. Well, but the state denied that agreement. But the rule itself, Supreme Court Rule 202 says that— Unless there's agreement on one. The notice, order, or stipulation. So the application of the rule itself, how an attorney applies it, that's the question of fact. That's the standard of care that the court is requiring. I'm curious. How did two depositions get in and one not? Because the other— He won. Didn't get in. The other two, Dr. Lin and King, on their face was the same stipulation, same agreement between John and the Attorney General Volz, that these depositions would be considered evidence. The face of the other two, on the face of the depositions themselves, said evidence. On Lin and King. On Dr. Schrodinger, the cover, said discovery. And that was the issue that was raised by the Attorney General that took over. He also wanted to have the—to reopen the proofs? Yes. That never did. That's what—in the transcript that we cited, that was from the Court of Claims, and I can give you the page numbers. It's page 9, and it's plaintiff's Exhibit 1 in the record that's in the court here. Page 9 and then page 138. The Commissioner actually says that he would reserve ruling and the decision to allow John to go back, and if there's a dispute, then present the evidence deposition. And that never occurred. In fact, the hearing was on March 18th of 2004. The order that was finally issued by Commissioner Usursa was two years later, in March 2006. And without any notice or anything, the order is issued saying you didn't comply with Q02, therefore we're not going to consider Dr. Schrodinger's evidence deposition. So why didn't Mr. Popper go back and get a supplemental deposition? He asked the court after—well, let me break that down into two parts. Initially, Justice, he did at the hearing at the Court of Claims. When the issue was first approached, Commissioner Usursa had the colloquy with the counsel that he could reserve ruling, and if they conclude Q02 was not met, that then they could go back and re-open proofs. And again, it wasn't until two years later when he issued the order that, without even inviting the opportunity, that the decision was made. Subsequent to that, John did, in the petition for re-hearing, said, well, that's manifestly unfair, the way this came down, and the client should be afforded the opportunity to present this evidence, and that was denied. In the Court of Claims, there is no appellate. I mean, that's it. So there was no review. What did Mr. Papa do for two years, just sit and wait? From March 2004 to March 2006, never filed a pleading to submit the supplemental deposition? Sure, but the way it went in is the way Commissioner Usursa said it was that if there was an issue or problem, then they could resolve it. And so not having heard, not having anything from Commissioner Usursa, you would think that the evidence was going in in the two-year timeframe. But even with that, the question that you've asked, that's where you get down to the expert testimony. That's not a question of law, what happened in those two years. That's an attorney judgment. Should John have done this? Should he have done that? And the experts in this case that Judge Lopino got to hear and see and listen to both testified from the beginning of the notice to the end of the decision. And Judge Lopino concluded that Mr. Bartholomew's testimony was more convincing to him on the entire representation. Can I go back to the 202 issue that you raised? Absolutely. The 202 issue is a question of law for the Court of Claims. But again, it's application, how an attorney handles a Supreme Court rule every day. In our practice, we look at the Code of Civil Procedure, 21005. Why wasn't a 21005 filed in this case? If it's such an issue of law that no person could ever make a different decision because the attorney for the appellant used her judgment in deciding how to handle it. We're faced with Supreme Court rules all the time. How we apply those is the quintessential judgment that we exercise. So when John thought under Supreme Court rule where it says, the notice, order, or stipulation to take a deposition shall specify, he's relying on the agreement of the other attorney. Something that we do every day. In fact, in this case, the expert for the plaintiff, Mr. Damick, he testified in the record at page 63, line 2, that Mr. Popov was very clear that he had an understanding that these three depositions would be evidence, stipulation, and that Mr. Damick said he's not critical of that. In fact, I went on at page 71 of the record, line 6. He agrees that an oral agreement, an understanding about whether or not this deposition would have been evidence, is not a breach of the standard of care. So John's use of the rule in scheduling the depositions and entering into an oral agreement that they would be evidence, that's what we're looking at, is whether or not that's a deviation from the standard of care. And by the plaintiff's expert's own admission, it's not to enter into an oral agreement. And that sometime a court later concludes that 202 wasn't compliant with can't be the standard upon which we view an attorney's conduct. For in every case then where an attorney loses, we'd have malpractice. It's not a fair way of looking at it. Wasn't there a second deposition scheduled for Dr. Sheldon? There was. And the first deposition said it was discovery. Yes. And so Mr. Papa didn't notice the error at that time? That's correct. He overlooked it. Yes, and that's again. So was the second deposition that was noticed ever taken? Yes. And it was taken as a discovery deposition? It was a continuation. So what happened was Dr. Sheddinger, you appear to know him, he only gives you an hour to complete. So it's his clock. Very expensive. Yes, yes. So it's his clock. And so he cut off the AG and said, you're done. So they had to reschedule the finish. And if you look at the deposition itself, it's as though it were evidence. I mean, you have the plaintiff's lawyer taking the initial questions, and then it says for when the AG came back, it's a continuation of cross-examination. So the whole thing reads as though it were evidence. The second portion you'll see in the record does not say discovery or evidence. So it just says deposition in justice. It's a continuation of the first one. And Mr. Papa had no remedy for his client after the court of claims issued its order? No. And I didn't know that until this case. No administrative review. Right. Until this case, I had no idea that there's no appellate review of what happens in the court of claims. So, I mean, that was it. So nobody can review what they did and the outcome, which brings me to the second part on the proximate cause. The legal malpractice cases generally, when they go through their fruition, what we've done here is they first discuss was there negligence, was there a deviation from the standard of care, did the lawyer exercise his or her professional judgment, and in doing so, did they do it properly. And that has always been a question of fact. And it's the expert issue. On the proximate cause, it's a little different in legal malpractice cases because, as counsel for the appellant pointed out, it's a but-for test. But for the attorney's alleged negligence, would the outcome have been different? And in this case, it's interesting because, as you say, because there's no appellate review, generally the question is what would a reasonable court of claims judge done had he or she been presented with Dr. Schettinger's deposition? That is, would Dr. Schettinger's deposition have altered the outcome? When we do it in a trial, in a simple case of slip and fall, and the attorney misses the statute of limitation, you actually have to try the underlying case to a jury, as though it were a fresh slip and fall case. You have to prove all the elements, the plaintiff and the damages. Here it's interesting because the court of claims, Commissioner Usursa, and I disagree with the appellant's counsel here, he made the decision that the October 5, 1998 incident was an intervening cause. If you read page 3 of his order, which is in the record, Plaintiff's Exhibit No. 11 in the underlying case, Commissioner Usursa and the three commissioners, I can't read their names, who signed off on it, were very clear that the plaintiff's failure in the underlying case to disclose this jurisdiction, of which she made an incident report with her employer. So the accident is April 1998 with the car, and then she has this October 1998 chair incident. She hasn't even seen Schettinger yet. She's seen the other two doctors, doesn't report the incident to any of the doctors. And Commissioner Usursa also said not only did you not report the October 5, 1998 incident, of which you made an incident report, you didn't tell the other doctors about other prior back injuries that you had. So the credibility was a big issue in that court of claims, and it also then, in this case, was something that Judge Lopinol, as a matter of fact, had to consider when deciding the underlying case. So the question was, would Dr. Schettinger's deposition have somehow transformed the outcome? And if you follow the logic of Commissioner Usursa, whether it's right or wrong, it wouldn't have, because Dr. Schettinger's testimony suffered from the same problem. He was never told about the historical event of October 5, 1998, and that's what Commissioner Usursa, again, right or wrong, got hung up on. So they were unable to show that any alleged negligence approximately caused any damages to Ms. Reed in this case. And again, that would be a question that Judge Lopinol looked at this from the eyes or through the spectacle of a fact finder, and we'd have to use the manifest weight of the evidence to determine whether or not he was right or wrong. And I don't believe that, based on the record in this case, as short as it is, that there was anything to say his conclusions were so apparently wrong or unreasonable or arbitrary that he should be reversed in this instance. I wanted to point out one other thing. We never argued with Judge Lopinol that the court of claims was wrong. We argued that John wasn't negligent in applying his professional judgment, and two, that there was no, even if Schettinger's deposition had come in, it wouldn't have changed the outcome based on the logic used by Commissioner Usursa, and I think that's the paradigm in which you have to look at the case in this instance, the malpractice case. So I'm willing to answer any more questions. Can I respond to one thing? You asked the closing argument about John's recommendation. We had a case here, Merritt, I'm not sure if one of the justices was on that case, versus Hopkins-Goldenberg, and that was the big issue there where my client had made settlement demands, and the court here in the Fifth District specifically says, you know, that can't be used in this, an admission against an attorney. I mean, because then we'd never have one. People making settlement demands, and the whole process is you go high, and you hope to meet somewhere right in the middle. And the same thing, I can't imagine too many cases where the plaintiff's lawyer said, give me $5 million, and the jury come back with $5 million, or if you're lucky enough in the Paul Newman case, they say, can we award more? You know, generally, there's, right, we said the jury used their judgment, and they find some ground if they find liability between two extremes. So I don't think. Well, I was focusing on Mr. Poppe's closing argument to the court of claims the last couple of pages where he very clearly sets out how he calculates her damages. He gives her very modest, if you will, $10 per hour as a phlebotomist, and talks about her lost wages. And so it's clear to me in the closing argument that he writes, not where you're making settlement demands expecting somebody to go less. He's actually suggesting a very specific amount and even gave up on some of the losses in this. So that's why I was asking. I mean, he clearly contemplates that Dr. Schrodinger's deposition will come in. Yes. The issue that you raised would go to wait, wouldn't it? Yes. So. Yes. But that never gets considered. So I'm looking, when I ask the question, at the words of Mr. Poppe about what he thinks his client's claim is worth. Well, I think he clearly thought, based on the calligraphy that occurred, that that deposition was going in. Okay. And that's what I was asking. Okay. The evidence did go in, and you'll see in the record, Exhibit 1, on the medical bills. So it wasn't, all the medical bills after October went in. And if you look at Commissioner Usurs' order, he says, I'm cutting it off on the 5th because of that. Because there was no evidence to connect them. No, Lynn and Kim. No, I mean, Schrodinger's evidence couldn't connect the substance. Lynn and Kim did, though. But those weren't surgical bills, were they? No, but there were bills that occurred after, and pain and suffering that occurred after. So there was evidence by Lynn and Kim of damages that would have gone past that date of October 5th. I think there were $43,202.76 that couldn't be considered. Is that true? That's for Schrodinger. Correct. But there were bills by both Lynn and Kim that did go past pain and suffering that they testified to that could go past. Okay. Thank you so much. In regard to the last point that you were discussing, Your Honor, only Dr. Schrodinger could connect the need for surgery with the injury in June. Without Dr. Schrodinger's testimony, none of the surgical bills or the attendant damages could be considered and were not considered by the court of claims because they had no medical evidence to support the relationship between the June injury and the surgery. The risks in regard to a stipulation that is nowhere on the record anywhere in the depositions, in letters, it is strictly an oral, supposedly, understanding between Mr. Popham and the attorney who was representing the state at the time the depositions were taken. By the time the hearing occurred, several months later, that attorney for the state was no longer on the case. Is it accurate that your expert testified that it was not a breach of the standard of care to have an oral agreement in that regard? It is not, but when... It is not accurate that your... No, no, I'm sorry. Okay. It is not a breach of the standard of care to have an oral agreement when everyone agrees that there is an oral agreement. Unfortunately, in this situation, what happened was that Mr. Popham's initial error in failing to properly designate his notice of deposition as an evidence deposition caused all of the risks that occurred afterward. Well, if the trier of fact in this case found that Mr. Popham reasonably believed that he had an oral agreement, couldn't that affect the trier of fact's decision about whether he was negligent if both experts are testifying that it was not a breach of the standard of care to have an oral agreement? Well, the question is whether or not Mr. Popham's belief was reasonable under all of the circumstances as they occurred in this case. And those circumstances include the front of Dr. Schrodinger's deposition saying that it was a discovery deposition. Now, Mr. Popham admitted in his testimony in this case that he had the opportunity to look at the first Schrodinger deposition prior to the start of the second deposition. To look at that deposition and not notice that it plainly says discovery deposition on its cover is negligence. He had a clear opportunity at that very point to correct that problem and he failed to. That deposition continued to say discovery deposition rather than evidence deposition as Dr. King and Dr. Lynn's depositions were designated on their covers. And that is the whole cause of the problem. And the root cause of the problem is Mr. Popham's failure to designate his notice in the first instance. Because he had these opportunities to correct it, the error was compounded. By the time he gets to the hearing in March, he knows that there is a different attorney than the one that he was working with back in the summer before. At that point, when he's preparing for the hearing, he had another opportunity to look at the deposition. Even if he only looked at the cover and said, okay, here's Schrodinger's deposition, it says discovery deposition. How could he not at that point, when he knows he's working with a different attorney, fail to correct that designation? If, in fact, Mr. Esursus and the Court of Claims' decision was based so much on the plaintiff's credibility and some failure to disclose what she honestly believed was a total non-event and so testified in her testimony before the Court of Claims, if that was such an issue for the deciders and that is why they cut off, then why would they award any damages at all to the plaintiff? Why not just say the plaintiff failed to prove her case and failed to properly reveal her condition to all of her doctors? And yet, that's not what the Court of Claims did. Okay, thank you. Thank you. All right, we'll take this matter under advisement. Thank you.